CONFEDERATED SALISH & KOOTE-
NAI TRIBES OF the FLATHEAD RES-
ERVATION, MONTANA, et al, Plain-
tiffs,

v.

STATE OF MONTANA, et al,
Defendants.

No. CV 81–149–M.

United States District Court,
D. Montana,
Missoula Division.

Sept. 9, 1985.

James Goetz, Goetz, Madden & Dunn,
Bozeman, Mont., Daniel F. Decker, John B.
Carter, Tribal Attorneys, Pablo, Mont., for
plaintiffs.

Helen S. Maclay, Missoula, Mont., Deir-
dre Boggs, Hamilton, Mont., Chris D.

Tweeten, Atty. Gen., Helena, Mont., for
defendants.

OPINION AND ORDER

LOVELL, District Judge.

Plaintiffs, the Confederated Salish and
Kootenai Tribes and certain of their mem-
bers (hereinafter also "Tribes") instituted
this action in 1981, seeking to enjoin the
application or enforcement of the Montana
Water Use Act of 1973 [§§ 85–2–101
through 85–2–704 and §§ 3–7–101 through
3–7–502, M.C.A. (1983)] on the Flathead
Indian Reservation and to any and all wa-
ters arising upon, flowing through or un-
der, bordering, or otherwise occurring on
the Reservation. The Tribes further seek a
declaration that the state's Water Use Act
is unlawful and unconstitutional as applied
to the Tribes and their members and to all
waters arising on the Reservation.

On July 12, 1982, Plaintiff filed a motion
for summary judgment. By order of the
Hon. Russell E. Smith, dated August 3,
1983, the proceedings were stayed pursu-
ant to stipulation of the parties, who had
entered into negotiations. The order re-
quired the parties to file a status report
every four months, and provided that any
party at any time may request the Court to
move the case forward, at which time the
Court will set a time within which the State
of Montana and other defendants shall re-
spond to the Tribes' motion.

The State of Montana has requested this
Court to terminate the stay and to set a
briefing schedule on the Tribes' motion for
summary judgment. The Tribes in turn
have withdrawn their motion and seek to
have the stay continued. The Tribes fur-
ther request that the Court take no action
in this matter until the Supreme Court of
Montana enters a decision in *State of Mon-
tana ex rel. Mike Greely, Attorney Gener-
al, Water Court of the State of Montana
and the Judges of that Court, Petitioners,
v. United States, individually and as
trustee for each of the hereinafter named
Indian Tribes, et al., Respondents,* 691
P.2d 833 ("*State of Montana v. United
States*").

There are two issues pending before the Supreme Court of Montana in *State of Montana v. United States.* The first is whether the Disclaimer Clause contained in Article I of the Montana Constitution prohibits state adjudication of Indian water rights. The second issue is whether the adjudication procedures set forth in the Montana Water Use Act are adequate to adjudicate Indian Water Rights. *State of Montana v. United States* thus represents the latest development in the continuing dispute over the proper forum for adjudication of Indian and federal reserved water rights.

The history of the dispute in Montana dates back to 1979, when Judges Hatfield and Battin of this District dismissed seven consolidated actions brought by the United States for the purpose of adjudicating the water rights of certain Indian tribes as well as Indian and non-Indian individuals in and to certain streams. *Northern Cheyenne Tribe v. Tongue River Water Users Association,* 484 F.Supp. 31 (D.Mont.1979). The Court cited *United States v. Colorado River Water Conservation District,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), for the factors instrumental in its decision to dismiss the action in deference to state proceedings:

> in water rights litigation, the interdependency of the various rights; the availability of comprehensive state systems for adjudication of water rights; the stage of the proceedings in the federal court, beyond the filing of the complaint and the motion to dismiss; the extensive involvement of state water rights; and the apparent design of the McCarran Amendment to avoid piecemeal or burdensome litigation.

*Northern Cheyenne Tribe, supra;* 484 F.Supp. at 35. The Court then examined Montana's Senate Bill 76 and its provisions for water rights adjudication (now codified in Part Two, Chapter Two, Title 85, M.C.A.), finding that they "reflect both the policy and the essential mechanism for adjudication of state water rights. Adjudication by adversary proceeding initiated by one claimant against all others in his drainage has been forsaken in favor of blanket adjudication of *all* claims, including federal and federal trust claims." *Id.,* at 35–36 [emphasis in original].

On appeal, the Ninth Circuit Court of Appeals reversed, holding in part that the McCarran Amendment did not grant jurisdiction in a state which "expressly disclaims jurisdiction over Indian lands within its constitution and enabling act." *Northern Cheyenne Tribe v. Adsit,* 668 F.2d 1080, 1084 (9th Cir.1982).

The case was ultimately appealed to the United States Supreme Court, which held that the District Court properly dismissed the actions in deference to the state adjudicatory process. *Arizona v. San Carlos Apache Tribe,* 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983). In a footnote, the Court stated that "resort to the federal forum should remain available if warranted by a significant change in circumstances, such as, for example, a decision by a state court that it does not have jurisdiction over some or all of these claims after all." *Id.,* 103 S.Ct. at 3215, note 20.

On remand, the Court of Appeals for the Ninth Circuit stated that it believed dismissal to be unwise. "A stay of the federal actions would be preferable to a dismissal here so the federal forum would most readily be available if warranted by a 'significant change of circumstances'...." *Northern Cheyenne Tribe v. Adsit,* 721 F.2d 1187, 1188 (9th Cir.1983). The district courts were instructed to stay the actions until "state court proceedings have been concluded." *Id.,* at 1189.

The directives of the Ninth Circuit Court of Appeals in Adsit suggest that this Court should further stay the present proceedings. The Court recognizes that this case is not identical to the actions originally dismissed by District Judges Hatfield and Battin, since it does not expressly request a general adjudication of water rights on the Flathead Indian Reservation. On the other hand, were this Court presently to rule in the Tribes' favor, it would effectively thwart the efforts of the Montana Water Rights Compact Commission and the entire state adjudicatory process. Should the Su-

preme Court of Montana rule that the state proceedings are inadequate for adjudication of federally reserved water rights, then it may be appropriate for this action to proceed, but not before.

Recently, this Court decided the case of *Confederated Salish and Kootenai Tribes of the Flathead Reservation v. Flathead Irrigation and Power Project, et al.,* 616 F.Supp. 1292, wherein the Court held that adjudication of water rights, including federally-reserved water rights, is a proper function of the courts of the State of Montana to which this Court would defer. The Court nonetheless issued a Temporary Restraining Order under the emergency circumstances therein claimed, to maintain the status quo while the Tribes' alleged aboriginal fishing rights guaranteed by treaty were under consideration. The parties introduced evidence purporting to show the present disarray of Montana's water adjudication system, and specifically a petition filed in the Supreme Court of Montana by the Department of Fish, Wildlife and Parks. This and other evidence indicates that the water adjudication process is in the midst of controversy but nonetheless gradually being stabilized and put in order. Under these circumstances, where the Supreme Court of Montana will soon decide these critical issues of disclaimer and adequacy of state proceedings, it would only exacerbate the existing problems should this Court meddle in the water adjudication arena.

It is thus clear that the parties' present remedy is to press action at the state level, not to insist on a federal forum which must remain unavailable in the presence of these unresolved matters of state law.

THEREFORE, IT IS HEREBY ORDERED that all proceedings in this action are stayed until state court proceedings have been concluded or until the further order of this Court.

IT IS FURTHER ORDERED that the parties are to file a status report in this matter once each month, the first such report to be filed on or before September 30, 1985, with additional reports filed prior to the last day of each succeeding month until further order of this Court.